# Memorandum



| Minimization Instructions for (917) 559-1800, ESN 268435457600516523, serviced by Sprint PCS, subscribed to by MELISSA NEUMAN, 1181 44TH Street, Brooklyn, New York 11219 (the "SUBJECT TELEPHONE") | January 13, 2010 |
|---|---|

To

Monitors and Agents

From CHARLES KLEINBERG
(718) 354-6012 (office)
(347) 482-9627 (cell)

I. **INTRODUCTION**

This memorandum is designed to serve as a guide for all agents, officers and other individuals participating in the interception of wire and electronic communications of MOSES NEUMAN, also known as MOISHE, YUDAH NEUMAN, MELISSA GOLDBERGER, also known as MELISSA NEUMAN, REUVEN SOBEL, EDWARD GRODSKY, LENNY LNU, AVIGDOR GUTWEIN, MOSES SCHLESINGER, CHAIM LEBOVITS, LIPSHITZ YEHUDA BRIZEL, DAVID LNU, JEWEL STRADER, LEO FEKETE (collectively referred to as the "Named Interceptees"), and others yet unknown, over (917) 559-1800, ESN 268435457600516523, serviced by Sprint PCS, subscribed to by MELISSA NEUMAN, 1181 44TH Street, Brooklyn, New York 11219 (hereafter "Target Telephone"). This memorandum contains information relating to the legal requirements for intercepting wire communications and some of the procedures to be followed during this interception. It is important that you take the necessary time to familiarize yourself with the contents of this memorandum and the other required readings discussed in the next section. You must carefully review the following procedures and guidelines. Please keep your copy of this memorandum and refer to it as necessary during your monitoring.

II. **REQUIRED READING**

Before you begin to monitor communications you must read and be familiar with the contents of:

    A.    This memorandum;
    B.    The Affidavit of Special Agent MARIA ALBRIGHT, made in Support of the Application for an Order Authorizing the Interception of Wire Communications; and
    C.    The Court's Order Authorizing the Interception of Wire Communications.

All of these documents will be provided to you before the interception begins.

Knowledge of the contents of this memorandum is important as it provides information regarding the legal requirements of electronic surveillance and some of the procedures to be followed during the interception. The affidavit will provide you with an understanding of the scope of this investigation and the subjects involved, which will assist you in minimizing non-pertinent conversations.

A thorough reading and understanding of the Court's Order authorizing interception is crucial, as the electronic surveillance in this matter must be conducted in accordance with that Order. This memorandum specifies the conditions under which interception is to occur and must be followed. A copy of the Order will be posted at the monitoring post.

Before you begin monitoring for the first time you will be required to sign a form indicating that you have read the required materials, are familiar with their contents, and will conduct the interception in accordance with the requirements set forth in those materials.

III.     THE SUBJECTS AND OFFENSES

   A.    The Subject Interceptees

The Order authorizes the interception of telephone conversations relating to the criminal activities of the Named Interceptees, as well as any co-conspirators who are later identified. You should be familiar with all known Target Subjects and their roles in the organization, as set forth more fully in the Affidavit of MARIA ALBRIGHT.

   B.    The Criminal Activity Authorized to Be Intercepted

The Order authorizes interception of telephone conversations which relate to the following federal criminal offenses: (a) offenses involving mail fraud, wire fraud and money laundering in violation of 18 U.S.C. §§ 1341, 1343, and 1956, (b) conspiracy to do the same, in violation of 18 U.S.C. §§ 371, 1349 and 1956, and (d) aiding and abetting these offenses, 18 U.S.C. § 2.

IV.     COMMUNICATIONS REGARDING "OTHER CRIMES"

The Order specifies those crimes for which telephone communications can be intercepted. If you inadvertently come across communication or activity regarding a crime <u>not</u> specified in the Order, you should intercept it and then <u>immediately</u> notify the Supervising Agent and the Supervising Attorney. A decision will be made as to whether or not future activity regarding the "other crime" will be monitored.

Remember, the Order specifies the crimes for which you can intercept conversations, and it is to be followed. Only "inadvertent" interception of conversations regarding "other crimes" is permissible. You cannot be monitoring with the purpose of uncovering criminal activity not specified in the Order.

V.      PROCEDURES FOR CONDUCTING THE ELECTRONIC SURVEILLANCE

   A.    Recording

Title 18, United States Code, Section 2518(8)(a) directs that the contents of an intercepted communication "shall, if possible, be recorded on tape or wire or other comparable device." This requirement is <u>mandatory</u> and simply means that all conversations which are monitored must be recorded. All intercepted communications in this investigation, including "spot monitoring," will be recorded on

an original "magneto optical disc" or "MO". Each disc has the ability to hold approximately 160 hours of conversation; therefore, only one original disc should be needed during the period of interception. However, if it becomes filled to capacity, the disc will be replaced by the Systems Administrator and Supervising Case Agent, in accordance with the procedures set forth below.

 Remember: if you are listening, you <u>must</u> be recording.

 The optical disc system is automatically set up to make a duplicate copy as the original is being recorded. An additional working copy or copies can then be created from the duplicate original disc.

 In the event of an equipment failure, the following procedure should be followed:

1. In the event of an equipment problem that does not amount to a total system failure, the monitoring agent should prepare a typed/written memorandum contemporaneously with his/her overhearing of the conversation.

2. The memorandum should be as near to a verbatim description of the conversation as possible.

3. The memorandum should close with a brief statement, showing the date and time that the communications were intercepted. The memorandum should be stored on the computer hard drive, and a hard copy of the memorandum should be printed, signed by the monitoring agent, and provided to the Supervising Agent.

4. The Supervising Agent should approve the memorandum by initials or signature.

5. The memorandum should be treated as an original recording, that is, the procedures outlined below should be applied.

6. The Supervising Attorney must be advised of any equipment failure or malfunction immediately, so that the Court may be advised in the next periodic report. In addition, a copy of the monitoring agent's memorandum will be provided to the Court.

 If a total system failure occurs, all monitoring will cease. The Supervising Case Agent and the Supervising Attorney should be made aware of the failure <u>immediately</u> so that appropriate technical assistance may be obtained.

 B. <u>Preserving Recordings</u>

 The recording which is made must be preserved in such a way as to prevent editing or alteration. To insure that the recording in this interception is preserved, the following procedures should be adhered to:

1. The original magneto optical disc will be installed by a Systems Administrator, witnessed by the Supervising Case Agent, and will be "password protected." No

3

persons other than the Systems Administrator and any back-up administrator(s) will have access to the disc until such time as it is to be removed for sealing by the Court. This original disc should be designated as the original "evidence" copy. The Systems Administrator and the Supervising Case Agent should be prepared to testify that the original disc was installed by the Systems Administrator and witnessed by the agent, that it was "password protected" at the time of installation, and that it was never accessed, altered or edited in any way throughout the course of the interception period.

2. At the end of the interception period, or when the disc becomes filled to capacity, whichever comes first, the original magneto optical disc should be removed from the optical disc library and placed in a sealed envelope, box, or similar container. The disc should be kept in the custody of the Supervising Case Agent and/or the investigative agency until such time as it is presented to the Court for sealing.

3. A chain-of-custody form should accompany the original optical disc recording. On this form should be a brief statement, signed by the Supervising Case Agent and a witnessing agent, which identifies:

   a. the order authorizing the recorded interceptions (by Court number, if possible);
   b. the date and time period of interception; and
   c. the place or facility where and over which the recorded communications occurred.

4. The chain-of-custody form should indicate, to whom, if anyone, the Supervising Case Agent transferred custody of the original recording, and the date and time of transfer. Each subsequent transfer, including that to the Court, should be noted on the form. The Supervising Case Agent should affix a label and/or other evidence designation to the original optical disc to identify it as corresponding to the accompanying chain-of-custody form. The label should be signed and dated by the agent.

5. Immediately upon the expiration of the interception period, the original evidence recording should be made available to the Court for sealing in accordance with the Court's instructions.

C. <u>Logs</u>

Computerized logs will be generated so that monitoring agents can provide written data regarding their interceptions. These logs are used in providing reports to the Court during the interception period and in litigating the case. Please be sure that the logs are <u>accurate</u>, <u>complete</u> and <u>well-written</u>.

Specifically, the monitoring agents should maintain a contemporaneous log, by shift, of all communications intercepted, indicating for every interception:

1. the participants, if known;

2. whether the call was related to fraud or money laundering;

3. whether the call was asset forfeiture-related;

4. whether "minimization" occurred (the computer will automatically indicate when interception of the conversation was terminated for purposes of "minimization");

5. the subject and a summary of the content of pertinent conversations; and

6. any peculiarities, such as codes, foreign language used, or background sounds.

The computer will automatically note the date and time of the intercepted call, the disk location of the communication, the duration of interception, and whether the intercepted call was incoming or outgoing, and the number called, if outgoing.

The computer also should automatically record the name of the monitoring agent, as indicated by the log-on password.

The log should note any malfunctions of the equipment or interruptions in the monitoring for any other reason, and the time spans thereof. The log should also note interceptions of possibly privileged conversations or conversations relating to crimes not specified in the original interception order.

At the conclusion of each shift, a memorandum should be posted at the monitoring site, providing information regarding any malfunctions and interruptions, as well as information regarding interception of privileged communications, conversations regarding new crimes, or other pertinent data.

In addition, to ensure the integrity of the monitoring process, each of the monitoring agents on duty when the recordings are made, the Supervising Agents, the Supervising Case Agent responsible for assuring chain-of-custody, and all other agents who are present at the monitoring site should sign-in and sign-out, as required. Monitoring agents will be provided passwords with which to log on to the computer system at the beginning of their shifts; all monitoring agents must log out of the computer system whenever they leave their workstations and at the conclusion of their shifts. No other person(s) should be given access to the computer system, other than the monitoring agents and, as needed, the Supervising Agents and the Supervising Case Agent.

VI.   DISCLOSURE OF INTERCEPTED CONVERSATIONS

Before disclosing the content of any intercepted conversations, consult with the Supervising Agent or the Supervising Attorney. Intercepted conversations cannot be disclosed to everyone. Investigative agents who participate in the interception of, or who have learned of, intercepted conversations from a person entitled to tell them may disclose and use that information in the performance of their official duties. This is not an unlimited authorization to disclose such information, but is confined to disclosures appropriate to the proper performance of the official duties of the agent, officer or other individual making or receiving the disclosure.

5

VII.  **SECURITY**

It is important that security be maintained at the location where the interception is being monitored to insure the integrity of the recorded conversations. Only authorized federal agents, specially-designated local law enforcement officers, other individuals under contract with the government, and the Supervising Attorney or an attorney designated by the Supervising Attorney will be allowed in the monitoring post while the interception is in progress. Friends, relatives, and curious agents and officers not involved in the interception are to be kept out of the location where interception is being monitored. There will be no exceptions to this rule. The Supervising Agent is specifically tasked with ensuring security at the monitoring site, and s/he should be prepared to testify that security procedures were properly followed.

VIII. **SPECIFIC INSTRUCTIONS FOR MONITORING CONVERSATIONS: MINIMIZATION**

A.  **Generally**

Title 18, United States Code, Section 2518(5) requires that interception "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." This provision means that you cannot blindly intercept all conversations. Instead, you must take precautions to "minimize" the interception of conversations that do not relate to criminal activity.

Difficulties arise because you generally do not know whether a conversation relates to criminal activities unless a portion of the conversation is monitored. If the monitoring indicates the conversation is of an innocent nature, it must be "minimized," that is, interception must be terminated.

All "minimization," whether in the form of termination of interception or "spot monitoring," which is discussed below, should be noted with some brief explanation of why the activity was not intercepted in its entirety. There should be <u>absolutely no monitoring without recording</u>. If there is a system failure, you should either record the conversation or activity on a backup recorder, if possible, or make as detailed a contemporaneous memorandum of the conversation as soon as possible. Such a backup recording or memorandum should be treated as if it were an original recording for chain-of-custody purposes. The Supervising Agent should promptly be notified of any such system failure and what attempts were made to preserve evidence of the conversation. Moreover, a conversation may relate both to criminal and non-criminal activities. Procedures designed to address these problems are outlined below.

B.  **Spot Monitoring for Subjects:**

Agents may "spot monitor" for a reasonable period not to exceed two minutes to determine whether a subject is present and participating in a conversation. This "spot monitoring" may occur as often as is reasonable, but in any event at least one minute should elapse between interceptions.

C.  **Subjects' Conversations:**

If a subject is engaged in conversation, interception may continue for a reasonable time, usually not in excess of two minutes, to determine whether the conversation concerns criminal activities.

6

If such a conversation is unclear but may be related to the criminal offenses named above, interception may continue until such time as it is determined that the conversation clearly no longer relates to that topic. If such a conversation is unclear but may relate to other criminal activities, interception should cease after about two minutes unless it can be determined within that time that the conversation does in fact relate to such other criminal activities, in which case interception may continue.

      D.     <u>The Parties to the Conversation</u>

Interception of calls to or from obviously non fraud or money laundering-related parties should be terminated as soon as possible. It may become clear during the course of interception that a suspect regularly calls certain telephone numbers solely for the purpose of communicating with uninvolved commercial establishments, friends, relatives or associates. If this is so, you should consider flagging the number and "minimize" as soon as it is clear to you that a call to such a number is taking place. If a pattern of non fraud or money laundering-related calls to a particular number or person is only beginning to emerge over time, consider "spot monitoring" (see discussion below) until you can place the telephone number in the category of non-fraud or money laundering related numbers or persons.

      E.     <u>The Subject Matter of the Conversation</u>

Interception of conversations which are not fraud or money laundering-related should be terminated as soon as possible. It may become clear during the course of interception that certain persons are regularly involved in non-fraud or money laundering related conversations. If this is so, you should consider flagging these parties, and "minimizing" as soon as it is clear to you that such non-fraud or money laundering related conversations are taking place. If a pattern of non-fraud or money laundering related conversations is only beginning to emerge over time, consider "spot monitoring" until you can identify the party as someone involved in non-fraud or money laundering related conversations. If you are uncertain whether conversations which do not appear to be fraud or money laundering related will remain so, consider "spot monitoring."

You should consider "spot monitoring" of conversations, that is, periodically monitoring what is being discussed for <u>brief</u> periods of time to assure yourself that the conversations are truly innocent, when you have doubt about the fraud or money laundering related nature of conversations. While "spot monitoring" is permissible and contributes to the overall objective of "minimization," you should only use it when there is some question in your mind as to whether the conversations may become fraud or money laundreing related. If you do not believe they may do so, you should terminate all interception.

      F.     <u>Have the parties previously been engaged in fraud or money laundering related conversations or conduct?</u>

If so, then it is reasonable to believe their future conversations may be fraud or money laundering related. Monitoring such activity in its entirety is generally proper since relevant activity may emerge at any point. Even here, though, circumstances may develop which demonstrate that you should "minimize" or "spot monitor." Earlier observations may have incorrectly concluded that the party was involved in fraud or money laundering-related conversations or conduct. Other circumstances may develop which make it unreasonable to believe fraud or money laundering related conversations will actually be intercepted. Finally, to the extent that conversation becomes innocent, you should "minimize" or "spot

monitor."

Initially, it may be difficult to know when it is proper to "minimize" because identities of persons are yet to be established, categories of conversation determined, and patterns of activity discovered. As time passes, however, you must draw on your experience -- and the experience of other agents -- to determine when "minimization" is appropriate. You should familiarize yourself at the beginning of each shift with any notice pertaining to "minimization" that has been posted in the control room and see to it that your experience is conveyed to other agents by posting a notice regarding any information you have learned that might pertain to minimization.

G.  Rules As Wire Continues:

The above instructions regarding the number of minutes of permissible interception will vary once experience has been gained. If experience shows that conversations between certain people are invariably innocent, interception of such conversations should be ended sooner. If experience shows that other individuals usually discuss criminal activities or mix innocent conversation with discussion of criminal activity, a longer interception may be justified. This is especially true for individuals who can be identified as participants with the subjects in engaging in fraud or money laundering. Read all posted memoranda and/or logs of interceptions on a continuing basis and notify the agent supervising the interception if patterns develop.

X.   SUMMARIES

Summaries (as complete as possible) of each conversation are to be made at the time of interception and are to be included in the logs. If the conversation is not recorded entirely, an appropriate notation should be made indicating the incomplete nature of the conversation and why the conversation was not recorded completely (e.g. "non-pertinent" or "privileged").

XI.   FOREIGN LANGUAGE

It is anticipated that some conversations may be conducted in Yiddish. These conversations will be monitored by someone who speaks Yiddish. In the event the translator is not a federal law enforcement officer, the translator, whether he or she is a language-trained support employee or under contract to the government, must be under the supervision of a United States Postal Indspector or Specially Deputized Officer. Conversations monitored by the translator, under the guidance of a law enforcement officer, may be "minimized" by the translator and an English translation of the pertinent criminal conversations may be furnished to the Supervising Agent.

XII.   SUPERVISING ATTORNEY

The name, office telephone number, pager number, and home telephone number of the Supervising Attorney is provided. If you have any questions at any time regarding a legal question concerning the interception, do not hesitate to contact the Supervising Attorney. It is much better to ask questions when issues arise, even if it means calling in the middle of the night, than not to ask the question.

Please follow the procedures and guidelines that have been provided to you and never hesitate to ask when in doubt.

DATED:   January 13, 2010

CHARLES S. KLEINBERG
(718) 254-6012 (office)
(347) 482-9627 (cell)
(718) 438-5020 (home)

## STATEMENT OF MONITORING AGENTS

I declare that I have read the following documents and am familiar with their contents:

- A. The Supervising Attorney's Memorandum to Monitoring Agents and Specially-Deputized Officers;
- B. The Affidavit of Special Agent of MARIA ALBRIGHT in support of the Application For an Order Authorizing the Interception of Wire Communications; and
- C. The Order Authorizing the Interception of Wire Communications.

I further declare that I will conduct interception in accordance with the requirements set forth in the above documents.

| DATE | NAME (printed) | SIGNATURE | AGENCY |
|---|---|---|---|
| 1/13/10 | Dane Wesley | [signature] | USPIS |
| 1/13/10 | Vincent Minecci | [signature] | USPIS |
| 1/13/10 | Carl Vaccariello | [signature] | USPIS |
| 1/13/10 | John Simone | [signature] | USPIS |
| 1/13/10 | Richard Cinnamo | [signature] | USPIS |
| 1/13/10 | Charles Schriver | [signature] | USPIS |
| 1/13/10 | Ed Gallashaw | [signature] | USPIS |
| 1/13/10 | Ken Lucente | [signature] | USPIS |
| 1/13/10 | Michelle Purnavel | [signature] | USPIS |
| 1/13/10 | Maria Albright | [signature] | USPIS |
| 1/19/10 | Glen McKechnie | [signature] | USPIS |
| 1/19/10 | Mike Wilson | [signature] | ICE |
| 1/19/10 | Uzayr Rahim | [signature] | ICE |
| 1/19/10 | Andrew Gent | [signature] | ICE |
| 1/19/10 | Brian Parkhill | [signature] | ICE |
| 1/19/10 | Mordechai Ben Ashur | [signature] | Interpreter |
| 1/19/10 | Erik Rosenblatt | [signature] | ICE |
| 2/5/10 | Sara Schuster | [signature] | Interpreter |
| | Maria Linkas | [signature] | USPIS |

## STATEMENT OF MONITORING AGENTS

I declare that I have read the following documents and am familiar with their contents:

A. The Supervising Attorney's Memorandum to Monitoring Agents and Specially-Deputized Officers;

B. The Affidavit of Special Agent of MARIA ALBRIGHT in support of the Application For an Order Authorizing the Interception of Wire Communications; and

C. The Order Authorizing the Interception of Wire Communications.

I further declare that I will conduct interception in accordance with the requirements set forth in the above documents.

| Date | Signature | Name | Agency |
|---|---|---|---|
| 2/19/2010 | *James F. Morrison* | James F. Morrison | USPIS |
| 2/19/10 | *[signature]* | TRACIE HORNEDO | USPIS |
| 2/19/10 | *[signature]* | Sheldon Tang | IRS |
| 2/22/10 | *Ruth Kohn* | Ruth Kohn | Metropolitan |