# Date: May 2005 — MASTER GENERAL FIELD BULLETIN

From: Jim Gelder
President of ING Life Distribution

**The ING Companies Will Not Issue Life Insurance Policies Intended to be Resold in the Secondary Market**

## Background

Over the past ten years, the insurance industry has seen a significant growth in viatical and life settlements and recently there has been a growth in investor owned life insurance (IOLI) and stranger owned life insurance (SOLI) concepts that utilize the sale of insurance policies by policyholders to third parties as part of the concept. Policies insuring the elderly or the terminally ill are attractive to investors because of the potential for high rates of return. Although the ethical implications of these arrangements can be debated, there is no governing body or industry regulation that adequately monitors them. Even though many states have adopted some form of viatical legislation that protects consumers, and the NAIC has issued a model act and a model regulation on this subject, these laws typically apply only to those consumers who are terminally ill. Only a handful of states have laws that address sales by seniors who are not terminally ill.

There are a number of IOLI and SOLI concepts currently being utilized in the marketplace in which a life insurance policy appears to be purchased for legitimate insurance coverage but the financing only acts as conduit to the life settlement market. These types of transactions share a common lineage:

- *A consumer is solicited with an offer of "free insurance" for a short duration, often two to three years;*
- *The consumer purchases a life insurance policy directly, or through a trust or business using non-standard financing of premiums and accrued interest;*
- *The consumer is paid a significant "participation" fee as an inducement to enter into the transaction;*
- *When the loan matures after the two to three year period, the consumer has three choices: 1) retain the life insurance policy by repaying the accumulated loan balance (the interest rate on such loans are significantly high and can be as much as 15%), 2) relinquish the policy to the lender in satisfaction of the debt or 3) sell the policy on the open market for cash to a life settlement company.*

Regardless of the means by which the life insurance policy is acquired, the one common rationale behind this type of arrangement is the intent to sell the policy when the loan matures.

## The ING Life Companies' Position

As an established leader in the financial services industry, the ING life companies will not accept applications for life insurance policies that are intended to be sold,

or in instances where there is a reasonable likelihood that the policy is intended to be sold, to a third party. This includes, but is not limited to, viatical and life settlements, as well as IOLI and SOLI concepts that utilize the sale of insurance policies by the policyholders to a third party as part of the concept. This position supports the best interests of our shareholders, reinsurers, valued distribution partners who represent ING, and our policyholders.

Accordingly, the ING life companies have adopted the following policies, applicable to sales of policies issued by ReliaStar Life Insurance Company, ReliaStar Life Insurance Company of New York, and Security Life of Denver Insurance Company:

- Life insurance policies will not be sold to applicants intending to resell them. Accordingly:

  - *Agents are expected to determine that the insurance will serve an appropriate purpose other than resale of the policy.*
  - *The Agent section of the new common application requires an agent to answer the question: "To your knowledge, does the owner intend to change ownership of the policy after its issuance - e.g., to a trust, viatical company, or other person?"*
  - *The Company retains the right to refuse unreasonable requests in the administration of policies such as large numbers of beneficiaries, duplicate statements, and specialized billing methods.*

- As in situations in which the insured dies during the contestable period, the sale of a policy during the contestable period will trigger an investigation into the accuracy of the medical information provided to the Company when the policy was underwritten. If state law permits sale during this period under certain conditions (i.e., a decline in health), the investigation will also seek to address whether or not those conditions have been satisfied.

The ING life companies have also adopted guidelines with respect to the administrative issues presented by life settlement transactions. These guidelines address the consent form obtained from a policyholder for release of information, the completion of documents to verify coverage and the limitations placed on designated owners and beneficiaries connected with this type of transaction.

General Agents, agents and/or producers who violate these rules are subject to penalties up to, and including, termination.

In the end, the ING life companies want to ensure that our customers' life insurance needs are met and that they understand what they purchased and why.

*Insurance products are issued by Security Life of Denver Insurance Company, ReliaStar Life Insurance Company, and ReliaStar Life Insurance Company of New York. Only ReliaStar Life Insurance Company of New York and its products are admitted in New York. 1000 Woodbury Rd., Suite 208 Woodbury, New York 11797. All companies are member of the ING family of companies.*