

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

AB:CSK          *Mailing Address*:   271 Cadman Plaza East
F. #2009R01998                     *Brooklyn, New York 11201*

                  *E-mail:*       *Charles.Kleinberg1@usdoj.gov*

June 9, 2012

**BY ELECTRONIC MAIL**
David Spears, Esq.
Spears and Imes LLP
Counsel for Yudah Neuman
51 Madison Avenue
New York, N.Y. 10010

       Re:   United States v. Chaim Mayer Lebovits, et. al.
             Criminl Docket No. 08-163 (SJ)

Dear Mr. Spears:

      I write in response to your two emails to me of May 24, 2012 and to clarify for you, as you request, that prior to the issuance of insurance policies on the lives of Chana Trietel and Louis Oberlander, ING did not identify any fraud alerts on these two insureds. In your two emails you commented on statements that your firm had made on behalf of Yudah Neuman ("Y. Neuman") in his Reply Memorandum of Law in support of his motion for the issuance of Rule 17(c) subpoenas ("Reply Brief"). In the Reply Brief at pp. 8-9, you stated that ING had, <u>before</u> issuing life insurance policies on the lives of Chana Treitel and Louis Oberlander, identified "high risk fraud alerts" on the Treitel and Oberlander applications, but that ING issued the Treitel and Oberlander policies notwithstanding these high risk fraud alerts. Annexed to the Reply Brief as Exhibit D was a one page document which referred to Chana Treitel.

      In the first of your emails to me of May 24, 2012, you stated that "[you] [had] misspoke[n] when [you] said [in the Reply Brief] that the Treitel and Oberlander references to fraud alert were created pre-issuance," and that you intended to "send a letter to the Court correcting that misstatement." However, in your second email of May 24, 2012, you stated, after reviewing additional documents produced during discovery, that "it now appears that Ex. D [annexed to the Reply Brief] was created after the issuance of the [Treitel] policy in the course of ING's internal investigation," "[b]ut that the document refers to information contained in Vendor Notes that were created prior to

the issuance of the policy."  You then asked me to look into the matter and to clarify the issue for you.  I have looked into the matter and, as noted above, I write to clarify that ING had <u>not</u> identified any "fraud alerts" on the Treitel or Oberlander applications <u>prior</u> to its issuance of policies to those two applicants.

      The full statement about fraud alerts for each of Oberlander and Treitel does appear, as you state, in the Vendor Notes that were generated pre-issuance.  But those Vendor Notes make clear that there were <u>no</u> fraud alerts for either applicant, stating as follows:  "SPECIAL MESSAGES - High Risk Fraud Alert: <u>Clear For All Searches Performed</u>."  Exhibit E to Reply Brief at p. B4462 (Oberlander) (emphasis added); Discovery at p. B3741 (Annexed hereto as Ex. 1) (Treitel) (emphasis added).  That notation means that no high risk fraud alerts were found pre-issuance.

      The single page regarding Treitel that you attached to the Reply Brief as Ex. D (Discovery at p. B3721), is, as you correctly stated in your second email to me of May 24, 2012, a page that "was created after the issuance of the [Treitel] policy [as a result] of ING's [post-issuance] internal investigation."  A good deal of the information about Treitel that was set forth in the Reply Brief (referencing Ex. D) was information that the ING investigator concluded during his <u>post</u>-issuance investigation.[1]

      The following is the government's understanding of the sequence of events with respect to the Treitel and Oberlander applications in question.  When each of these applications was received, ING requested that an outside company generate an Inspection Report ("IR") to determine the accuracy of the information set forth in the application.  However, that company could not complete its IR and could not, in particular, make a

---

[1] The notations in Ex. D that the "DOB listed on the application and IR is different from Lexis review" and that "No properties were listed to Chana or Chaim Treitel" were not contained in the pre-issuance vendor notes, but were part of the ING fraud investigator's post-issuance conclusions.  The notation in Ex. D that another Treitel policy was "in force" for $ 5 million prior to the Treitel policy in question was certainly known to ING pre-issuance because that prior policy was issued by ING through Liberty Planning.  In connection with that prior Treitel policy, Liberty Planning had submitted an Inspection Report from Infolink that confirmed Treitel's financial information and the other assertions made in the prior Treitel application.  <u>See</u> text below.

determination as to the accuracy of the financial information in the applications because it had difficulty contacting the applicants. See Discovery at p. B3740 (annexed hereto as Ex. 2)(Treitel)("Bad phone number will reopen if/when a new number is provided"); Reply Brief, Ex. E at p. 4459 (Oberlander)(stating that the company had left messages with the applicant's machine on 1/23 and 1/24 and that "this concludes our handling of the order"). However, in both cases, Liberty Planning supplied IRs to ING from other outside companies that Liberty Planning had approached to confirm the accuracy of the information on the applications. The Liberty Planning-solicited IRs on the two applicants reported that the financial information set forth in the applications of these two applicants was accurate. The IRs further reported that the applicants themselves and personal and business associates of the applicants had been contacted.

In the case of Oberlander, Liberty Planning had requested an IR from Profile Services, and ING received the Liberty Planning-solicited IR from Profile Services on January 31, 2008, prior to the issuance of the Oberlander policy. See Discovery at pp. B4437 to 4439 (annexed hereto as Ex. 3). The Profile Services Report fully confirms all of the financial information and other information on the application and states as its sources of information: Oberlander, Oberlander's CPA of 15 years and Oberlander's personal associate of 45 years. Ex. 3 at pp. B4437-38.

In the case of Treitel, Liberty Planning had submitted an IR from Infolink in support of a prior policy Treitel had obtained from ING for $5 million. See Discovery at pp. B3759 - 62 (annexed hereto as Ex. 4). The Liberty Planning-solicited IR on Treitel from Infolink fully confirmed the financial and other information listed on the prior Treitel application, which was similar to the financial information listed on the new Treitel application, and the sources of information listed by Infolink were, among others, Treitel, a business associate of Treitel of over fifteen years and a personal associate of over ten years. Ex. 4 at B3759, B3762. The Infolink IR, which was dated October 19, 2006, appeared to justify issuing Treitel a second $5 million policy in response to the new application.

As to the question of whether Treitel could be contacted in 2007 when the second Treitel policy was issued, Isaac Lebovits, the Liberty Planning agent on the 2007 Treitel application to ING, signed the 2007 application directly underneath Treitel's signature and stated in his Agent's Report attached to that application, Discovery at pp. B 3729-30 (annexed hereto as Ex. 5), that, as of November 2007, he had known Treitel for two years, that he had met personally with Treitel and reviewed her government-issued ID and that he had obtained

Treitel's Medical Declarations in person and recorded them in her presence. Isaac Lebovits was one of the Five Agents from Liberty Planning whom ING would later terminate for cause after conducting its post-issuance fraud investigation.

      Thank you for your inquiry on this matter.

                          Yours very truly,

                          LORETTA E. LYNCH
                        United States Attorney

By: _____
    Charles S. Kleinberg
    Assistant U.S. Attorney
    (718) 254-6012

cc: **BY ELECTRONIC MAIL**
Susan Necheles, Esq.
Joshua Geller, Esq.
Hafetz Necheles & Rocco
Counsel for Moses
500 Fifth Avenue, 29th Floor
New York, N.Y. 10110
212-997-7595

Jacob Laufer, Esq.
Jacob Laufer P.C.
Counsel for Avigdor Gutwein
65 Broadway
Suite 1005
New York, N.Y. 10006

Paul Schectman, Esq.
Nathaniel Marmur, Esq.
Stillman & Friedman, P.C.
Counsel for Chaim Lebovits
425 Park Avenue
21st Floor
New York, N.Y. 10022
212-223-0200

Harry Batchelder, Esq.
Counsel for Leo Fekete
40 Wall Street
28th Floor
New York, N.Y. 10005

```
James Druker, Esq.
Kase & Druker
Counsel for Edward Grodsky
1325 Franklin Avenue
Suite 225
Garden City, N.Y. 11530

Clerk of the Court (SJ)(SMG)
```